MAYOR AND CITY COUNCIL OF NASHVILLE v. W. A. KNIGHT et al.

1. TAX COLLECTOR. *Municipal. Settlements.* Upon a bill filed by a municipal corporation against its tax-collector for an accounting, the least evidence of bad faith upon the part of the collector, or reasonable proof of the existence of errors in settlements, owing to the fiduciary relation, will be sufficient to open the accounts.

2. SAME. *Same. Settlement.* A settlement by the tax-collector with the authorities of the corporation based, as shown upon its face, upon statements furnished by the collector, without any examination of his books, and which did not embrace all the items of charge, is not a final settlement.

3. SAME. *Same. Sureties.* The neglect of the authorities of a municipal corporation to proceed against its tax-collector as required by law or the by-laws of the corporation, will not release the sureties on the collector's official bond.

4. SAME. *Sureties.* A tax-collector was elected for a term of two years, and gave a bond with security for the discharge of his duties covering both years; afterwards the Legislature extended the time within which the citizens were required to pay their taxes for the first of these years, the collector giving a new bond, as required by the act: *Held,* that both sets of sureties were liable for the taxes of the second year.

Mayor and City Council of Nashville *v.* Knight.

FROM DAVIDSON.

Appeal in error from the Chancery Court of David-son county. A. G. MERRITT, Ch.

JOHN RUHM and J. C. BRADFORD for Nashville.

JAMES M. QUARLES, J. D. WADE, M. B. HOWELL, and W. D. COVINGTON for defendants.

COOPER, J., delivered the opinion of the court.

At the election held on August 3, 1876, the defendant, W. A. Knight, was elected trustee of the county of Davidson, and on the 26th of the following month he entered into bond as required by law, with most of the other defendants as his sureties, in the penalty of seventy-five thousand dollars, payable to the then mayor of the city of Nashville, and his successors in office, conditioned to collect and pay to the treasurer of the corporation all taxes levied by the city of Nashville on property and polls, or received by him in virtue of his office for the years 1876 and 1877. By the act of 1877, ch. 3, passed on February 11, 1877, the Legislature changed the time for making out and delivering to any sheriff or constable a certified statement of the unpaid taxes due from delinquent taxpayers for the year 1876, from the time then fixed by law until the 20th of October, 1877, and directed the county trustees to retain the tax lists and not to collect the taxes until the last mentioned date. The statute provided that the trustees, before proceeding further to collect said taxes, together with

their sureties, should appear before the county courts of their respective counties, and acknowledge in writing their willingness to be bound, under the terms and conditions of their bonds, for the collection of said taxes; and in case they refused so to appear and acknowledge their liability anew, then the trustee was to enter into a new bond for the faithful performance of his duties. The act further provided that if any trustee should fail or refuse to renew his bond, or give a new one, as hereinbefore provided, then the office of trustee should be declared vacant, and the county court shall proceed at once to fill the vacancy as required by law. On March 13, 1877, the defendant, Knight, with a part of the defendants as his sureties, entered into a bond in the penalty of twenty-five thousand dollars, payable to the then mayor of Nashville and his successors in office, conditioned to collect and pay to the treasurer of the corporation the taxes levied by the city of Nashville on property and polls, or received by him by virtue of his office for the years 1876 and 1877.

The defendant, Knight, continued in office as county trustee for the years mentioned, and undertook to collect and account for the taxes. The tax list of assessments on property and polls made out by the tax assessors of the county for each of those years were turned over to him by the clerk of the county court who also furnished a copy of the tax aggregate to the city treasurer. The trustee was charged on the book of the city treasurer with the aggregate amount of the taxes of the list thus turned over. From

time to time, Knight, as county trustee, made payments of taxes collected, for which he took receipts from the treasurer of the city. On November 5, 1878, a settlement was made by Knight with the city authorities, in which he was charged with the tax aggregate for the year 1876 as above, and credited with the sum of previous payments, with the amount of the delinquent list, errors, commissions, etc., and a balance of indebtedness found against him of $3,907.22. Knight paid this balance at the time, taking a receipt from the city treasurer for the amount "for taxes. collected for 1876." The account thus stated and balanced was reported to the mayor and city council by the finance committee as follows: " Your finance committee have examined the accounts as above rendered by W. A. Knight, county trustee, for the year 1876, and report that to the best of their knowledge and belief the said accounts are correct, as shown by the canceled vouchers accompanying the above statement." The statement and report were read and ordered to be spread upon the minutes of the board. Afterwards, on January 8, 1879, Knight paid, as trustee, $485.89 to the treasurer of the city, and took his receipt therefor "for interest on taxes for 1876, accidentally omitted in settlement." On February 25, 1879, Knight paid to the treasurer $165, and took his receipt for the same " in full for 'picked up' taxes for the year 1876." The application of the words " picked up," in this connection, will be explained presently. The receipts have been made a part of the record by consent.

On February 25, 1879, Knight had a settlement with the city authorities for the taxes of 1877. In this settlement he was charged with the tax aggregate for the year 1877, and some poll taxes not extended in the report of the county court, and was credited with the sum of his payments, the amount of the delinquent list, errors, commissions, etc. The balance found against him amounted to $4,648.84. Knight paid the amount, taking the treasurer's receipt therefor, "balance in full for taxes for 1877." The account thus stated and balanced was presented to the city council with the following heading: "W. A. Knight, county trustee, presents the following statement of collections for 1877," and these were spread upon upon the minutes of the board thus: "The above and foregoing reports were received and ordered to be filed." On the same day that this settlement was made, Knight paid to the treasurer of the city an additional sum of $815, and took his receipt for the amount "for 'picked up' taxes for the year 1877." The receipts are made evidence by consent.

The county trustee was authorized by law to assess property and polls for taxes which had been omitted from the lists of the regular assessors. The taxes thus assessed and collected by the county trustee were known and designated as 'picked up' taxes. These taxes; not being on the lists of the regular assessors, were not included in the tax aggregate entered in the city treasurer's books when the tax list for the year was turned over to the trustee. They were not included in the settlements made by the trustee as above

with the city authorities, and this fact is recognized by the trustee by his payment, subsequent to each settlement, of a given sum "for picked up taxes," as hereinbefore set forth. The taxes thus assessed and collected by the trustee were entered on his own books, but were not reported to the city authorities. The city having ascertained that these taxes amounted to a much larger sum than had been accounted for, filed this bill about the first of June, 1882, against Knight and his sureties upon both bonds as given above, for an account, and for a decree against the defendants for such amounts as Knight may be shown to have collected and failed to report and pay over for the years 1876 and 1877.

Such proceedings were had in the case that a decree was rendered by the chancellor declaring that Knight, and the sureties upon his first bond were liable for any default prior to March 15, 1877, and that he and the sureties on both bonds were jointly liable for any default which occurred after March 15, 1877. And the chancellor made a reference to the master to take and state an account of the taxes collected by Knight, and unaccounted for upon assessments of property and polls made by him for the years 1876 and 1877, and of any other items of collections on account of those years, and not included in his report to the city officials, or in the settlements made by him with complainant or its officers. He reserved until the coming in of the report the question of the legal effect of any settlement between Knight and complainant as an estoppel. And the

45—VOL. 12.

master was further directed to report whether there
had been any final settlement, and the facts in rela-
tion thereto. The decree fully adjudged the rights of
the parties upon other matters put in issue, and shaped
the reference with a view to a full report of the
matters of account.

The master took proof, and made a report in com-
pliance with the order of reference. He found as to
the taxes of 1876, that after charging Knight with
the "picked up" taxes for that year collected by him,
in addition to the tax aggregate of the regular assess-
ment rolls of that year, and allowing him the credits
of the settlement of November 5, 1878, and other
payments, there was a balance in his favor of $834.70.
On the other hand, as to the taxes of 1877, he found,
and so reported, that after charging Knight with the
tax aggregate of the regular assessment for that year,
and with the "picked up" taxes of that year col-
lected by him, and allowing him all the payments of
the settlement of February 25, 1879, and all other
credits shown, including the balance found in his favor
on the account of 1876, there remained a balance of
debt against Knight of $5,795.10. The master fur-
ther reported that all the items making up this bal-
ance of debt were collected by Knight after March
15, 1877, and prior to the expiration of his term of
office. The report, it will be noticed, if sustained,
terminates the litigation so far as the accounts for
1876 are concerned, the balance for that year having
been found in favor of Knight. The contest is nar-
rowed down to the collections for the year 1877.

No exceptions were filed to any of the items of debit or credit as set out by the master in his report either by Knight or his sureties.    Knight excepts to the gross aggregate of debts as being too large, and to the aggregate of credits as being too small, without specifying any errors in either the debits or credits. The exceptions were, of course, too general, were properly overruled, and have not been noticed in the argument made in this court.    The exceptions of the sureties only go to the principles upon which the account was taken as settled by the chancellor.    In other words, they are not directed to the details of the account, but only to the rulings of the chancellor on the merits.    No exceptions were needed for this purpose.    The exceptions were all overruled, and a decree rendered in favor of the complainant against Knight and his sureties on both bonds for the amount found due from them by the master with interest. There is a prayer of appeal by all of the defendants, which is granted upon complying with the requirements of law.    Knight, himself, and three of his sureties, have alone perfected their appeal.

There being no proper exceptions to the report of the master, the only questions which can be, or have been presented, are such as go to the merits.    The only point which has been made in behalf of all the defendants is, that the settlement of February 25, 1879, was final, and ought not to be opened except upon the clearest testimony of fraud or the existence of such a number of errors as to demonstrate

that justice cannot be attained without taking the accounts *de novo.* This is the rule in the case of formal settlements, clearly intended to be final, where there is no great inequality in the capacity and condition of the parties, and no fiduciary relation existing between them: *Patton* v. *Cone,* 1 Lea, 14. But the defendant, Knight, in the case before us, was the collector of the revenue of the corporation of Nashville during the years in controversy, and there existed between him and the city the fiduciary relation of principal and agent in the matter of the taxes collected. The least evidence of bad faith on the part of the agent in the performance of the duties of his agency, or reasonable proof of the existence of errors in items of charge or discharge will be sufficient to open the accounts in such a case. It can scarcely be contended, in view of the balance of debt found against the agent by the master, and the failure of any of the defendants to except to the items of the account as reported, that there is not clear and satisfactory proof of the existence of such errors as required an accounting *de novo.*

Moreover, the settlements relied on were not such formal settlements intended to be final, as the law requires to bring them within the general rule. It distinctly appears that both of the so-called settlements were made upon statements of the accounts furnished by Knight himself. The statement of 1876, was examined by the finance committee of the city, and found correct to the extent of the payments claimed, the vouchers being produced and canceled, and the

statement and report were received by the board of city council and spread upon their minutes. It does not appear that Knight's books as truslee were examined, or the items of collections made by him shown. The city acted alone upon the account as exhibited by him. And that he did not consider the settlement final is evidenced by the fact that shortly afterwards he made to the city, on account of his collections for 1876, two payments, one of $485.89, "interest on taxes accidentally omitted," and $165 "picked up" taxes. These latter taxes, which were assessed by Knight himself, and appeared only on his books, and of which the city had no "tax aggregate," were not included at all in the alleged settlement. The larger part of the recovery consisted of these taxes for the year 1877. The settlement for that year shows on its face that it was made upon a "statement of collections" presented by Knight, and was merely received and ordered to be filed. The debits of charge being based upon the "tax aggregate," did not include the "picked up" taxes for that year. And, although the treasurer's receipt for the balance purports to be "balance in full for taxes for 1877," it simply meant as found by that statement of Knight. That the receipt was not in full of all taxes for the year is shown by the additional payment on the same day of $815 "for picked up taxes for the year 1877." The residue of these latter taxes, assessed and collected by the trustee for that year, were never accounted for, nor brought to the notice of the city by its agent. Nor does it appear that the other credits

for delinquencies, errors, etc., were in fact passed upon.

It is suggested, not argued, that the sureties have been prejudiced by the failure of the city to make settlement with Knight as trustee, and enforce payments as required by the act of 1875, ch. 91, sec. 14. But the proof shows that the mayor and treasurer of the city did vainly endeavor to get the trustee to settle at the times and in the manner specified by the act. And all the recent authorities agree that the neglect of the officers of a government, or of a municipal corporation to proceed against the principal, or to call him to account, as required by law or the by-laws of the corporation, will not release the sureties.

The act of 1877, ch. 3, it will be remembered, extended the time for making out and delivering to an officer for collection, a certified statement of unpaid taxes for the year 1876. To preclude any contest as to the effect of this legislation on the rights of the sureties of the trustee, the act provided that the sureties must go before the county court and acknowledge in writing their willingness to be bound, under their bond, for the collection of these taxes, otherwise the trustee was required to give a new bond for the faithful performance of his duties. The act further provided that if the trustee failed to renew his bond or give a new bond—a contingency which did not happen in the case before us—the county court should declare the office vacant, and proceed to fill it. It is insisted on behalf of the sureties of Knight upon his bond of September 26, 1876, that they were released by this

act and what was done under it.    The argument, if
we understand it, is that the office of trustee was to
become vacant unless the old bond was renewed, or a
new bond given, and in either of these events the old
bond was at an end, and the liability transferred to
the bond as renewed or the new bond.    The point is
a nice one, and is pressed with earnestness and ability.

In October, 1874, this court held that an act of
the Legislature giving a particular tax-collector six
months further time from the passage of the law to
collect and account for his liabilities as such collector,
operated to release his sureties: *Johnson* v. *Hacker*, 8
Heis., 388.    On March 24, 1875, the Legislature passed
an act extending the time within which the tax-payer
might pay the taxes of 1874, and, in view of the
recent decision of the court, required the sureties of
tax-collectors, "in order to the fixing of the liability
beyond doubt under the operation of the act," to ap-
pear before the county court by a given time and ac-
knowledge in writing their willingness "to become and
remain liable" for all the acts and defaults of the
collector; and in case of their refusal the collector
was to enter into a new bond "for the faithful per-
formance of his duties."    To this extent the provisions
of the act of 1875 and of the act of 1877, now under
consideration, are substantially the same.    In the case
of *Chandler* v. *The State*, 1 Lea, 296, the effect of
the act of 1875 upon the liability of the original
sureties of the tax-collector, where a new bond had
been given as required by the act, came before the
court.    In that case, as in the case before us, the

tax-collector had accounted for all the taxes for the first year of his term, being the taxes the time for the payment of which had been extended, and the only question was as to the liability of the original sureties for the taxes of the second year. This court held that the liability on the original bond for the taxes of 1875 was not affected by the act, or by what had been done under it. "The act referred to," says Judge McFarland, "does not change the collector's duties as to the taxes of 1875, or in any manner refer thereto; and conceding that, by their failure to comply with this act, and by the execution of a new bond for the taxes of 1874, the present sureties were released from liability for the taxes of that year, still their liability for the taxes of 1875 remains as before." This language is equally applicable to the case now under consideration. The act of 1877 does not change the collector's duties as to the taxes of 1877, or in any manner refer thereto; and if it be conceded that the sureties, by their failure to comply with the act and by the execution of the new bond, were released from liability for the taxes of 1876, the time for the payment of which was extended, still their liability for the taxes of 1877 remains as before.

It is true, as argued, that the act of 1877 goes one step further than the act of 1875, and expressly directs that the office of the tax-collector shall be declared vacant upon the failure of the collector to renew his bond or give a new bond. But the contingency provided for has not happened, and so far as this case is concerned it is the same as if the provision were not in the act

at all. Besides, the provision only puts into express form what would have been the necessary legal result of a similar contingency under the act of 1875. For, if the officer failed to give the bond prescribed by law for the faithful discharge of his duties, he would vacate his office, and it would become the duty of the appointing powers to fill the vacancy: Code, sec. 766.

This conclusion renders it unnecessary to determine whether the extension of time to the citizen within which to pay his taxes will have the same effect upon the liability of the sureties of the tax-collector, as an extension of time to the tax-collector himself. The point is, perhaps, not as plain in favor of sureties as has been assumed in argument.

The two bonds of Knight contain precisely the same condition, and equally cover his liability for the taxes of 1877. They differ only in their penalty, the actual liability being within the smaller penalty. Whatever claim the sureties on the first bond might have to hold the sureties on the second bond primarily liable for the taxes of 1876, they have none as to the taxes of 1877. The complainant is entitled to hold all of the parties on both bonds liable for the recovery: *Odom* v. *Owen*, 2 Baxt., 446; *McGlothlin* v. *Wyatt*, 1 Lea, 717. The question of contribution among the sureties is not before us, and cannot be determined for the want of the necessary pleadings and parties.

The decree of the chancellor will be affirmed with costs.